## BRYAN v. MILLER.

[No. 23,350. Filed October 14, 1920.]

1. PLEADING.—*Demurrer.*—A demurrer to a pleading admits, for the purposes of such demurrer, that the alleged facts are true. p. 522.

2. ELECTIONS.—*Contest.—Proof.—Public Records.*—In an action by the plaintiff to contest an election on the ground that he had received the majority of the legal votes, as shown by a recount previously ordered by the court on petition, to make out his case in chief it was necessary for the plaintiff to prove only that, after rejecting all mutilated ballots and those bearing distinguishing marks, he had a majority; and the certificate of such recount and the ballots on file in the clerk's office constituted a public record of such facts. p. 534.

3. ELECTIONS.—*Contest.—Sustaining Demurrer to Answer.—Exclusion of Ballots as Evidence.—Prejudicial Error.*—In an action to contest an election on the ground that the plaintiff had received a majority of the legal votes as shown by a recount previously ordered by the court on petition, testimony that a number of ballots cast for the defendant were thrown out at such recount as mutilated, but which were not mutilated at the time they were originally counted, and that such ballots had been tampered with between the dates of the original count and the recount, was not admissible under the general denial, the pleading of such facts by special plea being proper; hence, the error in sustaining a demurrer to an answer alleging such facts may not.

be held harmless, on the theory that such facts were admissible under the general denial, where the court on the plaintiff's objection excluded such ballots as evidence. p. 523.

From Pike Circuit Court; *John L. Bretz,* Judge.

Action by Peter R. Miller against Wayne Bryan. From a judgment for plaintiff the defendant appeals. *Reversed.*

*John L. Summers, Roscoe Kiper* and *Henry Fulling,* for appellant.

*Frank Ely, S. E. Dillin* and *Richardson & Taylor,* for appellee.

EWBANK, J.—This was an action by the appellee to contest the election of appellant to the office of sheriff of Pike county, Indiana.

On November 17, 1916, the appellee filed with the board of commissioners a complaint which alleged in substance that at the general election, on November 7, 1916, the appellee was a duly qualified candidate for the office of county sheriff; that 2,157 votes were received and counted for him, and 2,176 for the appellant, but that the appellee received at least 2,180 votes; that in one named precinct fifteen illegal votes were cast—it is not stated that they were counted—for appellant, and that appellee received a majority in the county of all legal votes cast for candidates for sheriff; that in certain named precincts the election board failed to credit appellee with five legal votes cast for him, and credited appellant with five more than he received; that illegal votes of unknown persons were cast for appellant in each and every voting precinct of the county; and of the legal votes cast appellee received a majority; that ballots containing distinguishing marks and purposeful mutilations were

counted for appellant in every voting precinct of the county to such a number that, if they were not so counted, appellee would have a majority of the legal votes of the county; that many ballots correctly marked, cast for appellee in each and every precinct, were thrown out and not counted for him to such a number that, if they had been counted, they would have increased the vote counted for appellee so as to show a clear majority of the legal votes of the county for him; but that appellee could not describe the said marked and mutilated ballots, and the legal ballots which were not counted for appellee, because the ballots were sealed up in the hands of the clerk, but he believed an inspection of the ballots would show the facts alleged; that certain votes cast for appellee were tallied for a candidate for a different office, and not credited to appellee, but, if properly tallied, would make out a majority of legal votes cast for appellee.

Afterward, on November 27, 1916, a recount of the vote was had, pursuant to an order of the circuit court, on appellee's petition, and the commissioners, appointed to make such recount, reported that of the votes recounted appellee had received 2,180 and appellant 2,145 votes.

The case was then tried in the court of the board of commissioners upon an issue formed by an answer of general denial, and an appeal was taken from its decision. After the appeal was perfected, the appellant filed in the circuit court a second paragraph of answer to the complaint, which showed the appellant to be eligible to hold the office of sheriff, and denied that appellee received a majority of the legal votes cast, but averred that appellant received such ma-

jority, stating specifically that 4,333 legal votes were cast for appellant and appellee, and that of this number appellant received 2,176 legal votes and appellee 2,157, and that the result was so returned by the election officers. Said paragraph of answer further alleged that, after the official count, appellee procured a recount to be made on November 27, 1916, and the recount commissioners reported a result, as stated, "that when the paper bags containing the ballots and papers of each and all of the said voting precincts in said county were brought before said commissioners for recount, the seals and fastenings to said bags were broken and destroyed to more than half of said number of precincts, and that no explanation was ever made by the custodian of said bags as to why they were in such condition"; that in Stendel precinct there were voted and counted for appellant by the election officers sixty-one legal votes, but thereafter, before the bags containing the ballots were brought before said recount commission, parties unknown to the appellant marked and mutilated fifteen of the tickets so cast and counted for him, so as to make them appear illegal; that the same thing was done to twelve votes cast in Harrison precinct, and ten votes in Spurgeon precinct; that when the several election boards placed said ballots in said bags the ballots were all legal and bore no distinguishing marks, but thereafter unknown persons marked and defaced them; that in many of the precincts mutilated ballots rejected by the election boards had been taken out of the bags containing mutilated ballots, and tickets never voted, which were marked as having been voted for appellee and other candidates on the ticket with him, had been placed therein, which were counted by the recount commissioners.

To this second paragraph of answer the circuit court sustained a demurrer, and appellant excepted.

Upon the trial the appellee introduced in evidence only the certificate of the board of election commissioners, the record of the proceeding for a recount, and the certificate of the result of the recount. Thereupon the appellant moved for judgment on the alleged ground that the allegations of the complaint presented no issue as to the facts shown by the recount, and that appellee had failed to prove what he had alleged. After this motion was overruled, and an exception taken, the appellant proceeded to offer in evidence the tally sheets from the different precincts, and many ballots cast therein, and the appellee read in evidence many other ballots taken from the bags in which the ballots of the different precincts were preserved. By proceeding with the introduction of evidence relating to the issue before the court, appellant waived his exception taken to the refusal of the court to render judgment in his favor on the evidence offered by appellee, and it is not necessary for us to decide whether or not it was well taken.

Evidence was introduced tending to prove that certain tickets marked as if to vote for appellee were returned to the election officers in exchange for unmarked ballots which the electors then voted, and that such ballots were not destroyed, but were placed by the election officers in the bags with the mutilated ballots, and were taken therefrom by the recount commissioners and counted for the appellee; and that one voter was by mistake given two ballots, and marked both for the appellee, and that he voted one and the other was by the election board put in the bag with the mutilated ballots, and likewise counted

for the appellee on the recount. There was also evidence tending to prove that a number of ballots that were found in the ballot bags from Harrison, Stendel, Winslow, Otwell and Hawkins precincts, which indicated a purpose to vote for the appellant, but which were rejected by the recount commissioners (and by the circuit court) as bearing distinguishing marks, did not bear such marks when they were cast and counted in those respective precincts, and when they were sealed up in the ballot bags and delivered to the clerk. There was also evidence tending to disprove the said facts. There was also evidence that, when the ballot bags were left with the clerk, he put them on a shelf in a room that had two windows, which were without window locks, the shutter on one of which was broken, and also had a door to which there were three keys; that the clerk kept one of these keys, his wife had one, and the third key was part of the time in the possession of the courthouse janitor and part of the time carried by a town watchman. The clerk testified that, so far as he knew, the ballot bags were not opened until opened by the recount commission. His wife, the janitor, and the watchman did not testify.

There was evidence that, when brought to the recount board, some of the ballot bags were "busted"; that one had a hole in it; that on some the seals were broken and on some the seals were loose; that several were "in bad condition"; that the bag from the Stendel precinct was open; that the bag from the Spurgeon precinct was fastened in a manner different from the way the election officers of that precinct testified it was fastened when delivered to the clerk; that the seal was broken on the bag from the Hawkins pre-

cinct; that one "straight" ticket, correctly marked for all the candidates of appellee's party, was taken from the bag containing mutilated ballots in the Otwell precinct, and three in the Winslow precinct; that the recount board found in the bags for mutilated ballots some "straight" tickets, marked for each of the parties to which appellant and appellee belonged, and counted all of them, in different precincts. There was also evidence tending to explain and disprove the facts as so testified.

After the evidence was all in, and as applicable to the issues and the foregoing evidence, and other evidence, the court sustained appellee's objection to the introduction in evidence of forty-five ballots, previously offered by the appellant, as to which the court had at the time of such offer reserved its ruling, and excluded all of such ballots offered in evidence, to which ruling the appellant excepted. Of these offered ballots, a large number contained marks objected to as "distinguishing marks," such as appellants' witnesses had testified were not on any of the ballots put by the election boards into the ballot bags in which these were found.

There was no evidence tending to show who, if anybody, had marked these ballots, nor when it was done, except only the evidence that no such marks were on them when the election boards put them in the ballot bags and delivered them to the clerk, the evidence of the way they were kept in the clerk's office, and the possibility of access to the room where they were kept, and evidence of the condition of the bags when brought to the recount board twenty days later, and that the marks were on them when the recount board took them out of the bags.

The action of the trial court in sustaining a demurrer to the second paragraph of the answer presents for decision the question whether the alleged 1. facts that after legal ballots properly marked to vote for the appellant had been cast and had been counted for him, in excess of the number of legal ballots cast for appellee, and the ballots had been sealed up in bags and delivered to the clerk, unknown persons obtained access to them, through windows left unfastened, or through a door, the keys to which were not securely guarded, opened the ballot bags, and placed distinguishing marks on a number of such ballots greater than the number of appellant's majority, and replaced the ballots as so marked in the ballot bags, before any recount was had, constituted a cause of defense to plaintiff's action. The demurrer admits, for the purposes of such demurrer, that the facts as alleged are true.

Appellee does not dispute the sufficiency of the alleged facts to constitute a cause of defense, but insists that the ruling complained of was a harmless error because the facts so pleaded were admissible in evidence under the answer of denial, and because, he says, the appellant was permitted under that pleading to introduce all the evidence offered tending to prove the defense so attempted to be specially pleaded. But it appears from the foregoing statement that a very essential part of the evidence necessary to prove such facts, being the ballots taken out of the ballot bags, which bore distinguishing marks, such as witnesses had testified were not on any ballots when they were placed in those bags by the election boards, were excluded by the court, upon appellee's objection, when offered in evidence. So that the

ruling on the demurrer as followed up by the court, if erroneous, was not harmless.

However, we do not think that the answer of denial put in issue the defense sought to be presented by this second paragraph of answer. To make out his case in chief the appellee need only prove that, after rejecting all of the mutilated ballots and ballots bearing distinguishing marks, he had a majority of what remained; and with the court's permission he did this by reading in evidence a record of the recount of the votes found in the ballot bags in the clerk's office. The certificate of that recount and the ballots on file in the clerk's office constituted public records of what had been officially done, and to impeach those records by way of defense to an alleged cause of action based thereon, it was proper to set up by special plea the facts relied on to show that such records (the ballots cast) had been changed, and, for that reason, did not show the facts as originally recorded by such ballots.

If the facts so alleged had been put in issue by the answer of denial, then it would have been clearly an error for the court, by refusing to admit in evidence the ballots bearing marks which appellant's witnesses testified were not on the ballots placed in the bags by the election boards, thereby to prevent appellant from presenting his whole case. But we think that the first error was committed in sustaining the demurrer to the second paragraph of answer, and for that error the judgment must be reversed.

The judgment is reversed, with costs, and the cause is remanded, with directions to overrule the demurrer, and for further proceedings not inconsistent with this opinion.